# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF WISCONSIN

NORMA J. COLEMAN,

                    Plaintiff,

v.

EAGLE ENTERPRISES, LTD.,

                    Defendant.

Case No. 19-CV-801-JPS

**ORDER**

## 1. BACKGROUND

Norma J. Coleman ("Plaintiff") brought this action against her former employer, Eagle Enterprises, Ltd. ("Defendant"). Now before the Court is Plaintiff's motion for leave to amend her complaint for a second time (Docket #18) and Defendant's motion for summary judgment (Docket #21).

## 2. AMENDED COMPLAINT

When Plaintiff filed her original complaint against Defendant in May of 2019, only Attorney Walter Stern ("Stern") represented Plaintiff. (Docket #1). On August 8, 2019, this Court set a dispositive motion deadline of January 21, 2020. (Docket #12). On August 21, 2019, in accordance with the parties' joint rule 26(f) plan, (Docket #10), Plaintiff submitted an amended complaint, (Docket #13), to which Defendant filed an answer, (Docket #14).

Approximately four months later, the parties filed a stipulation of dismissal, with prejudice, as to Plaintiff's Title VII constructive discharge claim. (Docket #15).[1] In addition to Attorney Stern, this stipulation was

---

[1] The Court will adopt this stipulation. (Docket #15).

signed by Attorneys Paul Strouse ('Strouse") and Thomas Napierala ("Napierala") on Plaintiff's behalf. (*Id.* at 4). Although Attorneys Strouse and Napierala did not formally appear in this case until January 21, 2020, e-mail correspondence suggests that they were involved in this case as early as November 30, 2019. (Docket #30-1 at 2). On the same day that Attorneys Strouse and Napierala appeared on Plaintiff's behalf, Plaintiff filed an unopposed motion for an extension of the dispositive motion deadline. (Docket #17). The Court granted this motion, giving Plaintiff until January 24, 2020 to file a dispositive motion. However, instead of filing a dispositive motion, Plaintiff filed a motion for leave to file an amended complaint and a second amended complaint on January 23, 2020. (Docket #18, #19). Defendant timely filed its dispositive motion and subsequently submitted a brief in opposition to Plaintiff's motion to amend her complaint. (Docket #21, #29).

Notably, Plaintiff's very short "eleventh hour" motion for leave to amend her complaint was not accompanied by a brief. (Docket #18). In her motion, Plaintiff avers that, at a time set by the Court, Attorney Strouse will provide an affidavit in conjunction with Plaintiff's motion for leave to amend. (*Id.* at 1). In support of her request, Plaintiff asserts that "Attorneys Strouse and Napierala have been retained recently by Attorney Walter Stern to appear for the Plaintiff, Norma Coleman." (*Id.*) Plaintiff then suggests that an amendment to the complaint is necessary due to the parties' stipulation of dismissal of Plaintiff's constructive discharge claim. (*Id.*) Plaintiff further avers that this amended complaint will not prejudice Defendant because it neither adds nor removes parties, and will "more clearly reflect[] the remaining causes of action following the stipulation of the parties." (*Id.*)

Case 2:19-cv-00801-JPS   Filed 09/23/20   Page 2 of 21   Document 41

The Court should give leave to amend a complaint "freely . . . when justice so requires." Fed. R. Civ. P. 15(a)(2). Courts favor granting leave to amend, but they act within their discretion to deny such leave when there is a substantial reason to do so. *Select Creations, Inc., v. Paliafito Am., Inc.*, 830 F. Supp. 1213, 1216 (E.D. Wis. 1993). This includes undue delay, bad faith, dilatory motive on the part of the movant, repeated failure to cure deficiencies in prior amendments, undue prejudice to the opposing party by virtue of allowance of the amendment, or futility of the amendment. *Foman v. Davis*, 371 U.S. 178, 182 (1962); *Campania Mgmt. Co. v. Rooks, Pitts & Poust*, 290 F.3d 843, 849 (7th Cir. 2002).

The Court must deny Plaintiff's motion. First, Plaintiff filed this motion on the eve of the dispositive motion deadline. Plaintiff argues that the appearance of her new counsel warrants the Court granting her leave to amend. However, Attorneys Napierala and Strouse were involved in this case months before Plaintiff filed this motion. *See* (Docket #30-1 at 2). Presumably, they became acquainted with Plaintiff's amended complaint at that time. If they had any concerns about that complaint, they should have promptly filed a motion for leave to amend.

Similarly, Plaintiff's argument that the parties' stipulation of dismissal of Plaintiff's constructive discharge claim warrants an amendment of the complaint is unpersuasive. This stipulation was filed on January 15, 2020, a little over a week before Plaintiff filed her motion to amend. Further, it appears that the parties were in agreement regarding this stipulation nearly a month before they filed it. *See* (Docket #30-2 at 1). Plaintiff could have sought this amendment long before the dispositive motion deadline; Plaintiff's present motion is untimely and strongly suggests that her counsel had a dilatory motive.

Case 2:19-cv-00801-JPS   Filed 09/23/20   Page 3 of 21   Document 41

The Court also finds that permitting Plaintiff's amendment would be futile. "A court may determine that a proposed amendment is futile if it sets forth facts or legal theories that are redundant or immaterial . . . ." *Campania*, 290 F.3d at 850 (citation omitted). The parties are in agreement that Plaintiff's constructive discharge claim has been dismissed from this action. Thus, the Court does not see the necessity in permitting a last-minute amendment if its only purpose is to remove those claims from the operative complaint. In other words, in light of the parties' stipulation, the Court deems the proposed amendment immaterial. Further, Plaintiff's second amended complaint does not add any new claims, but instead makes additional references to Plaintiff's "hostile work environment claim."[2] The Court finds such references superfluous and redundant; Plaintiff is not bringing a new "hostile work environment" claim in her proposed amended complaint, as she already alleged the same in the operative complaint.

Lastly, even if Plaintiff *was* interjecting a new "hostile work environment claim" the Court would still deny her motion. Allowing Plaintiff to bring a new complaint on the eve of the dispositive motion deadline, without sufficient justification, would unduly prejudice Defendant. *See id.* at 849 ("A trial court may deny leave to amend when the amendment would cause the opposing party to bear additional discovery costs litigating a new issue . . . ."). Based on the foregoing, the Court denies Plaintiff's motion for leave to amend (Docket #18). Thus, Plaintiff's first amended complaint (Docket #13) remains the operative complaint. The

---

[2]Notably, Plaintiff fails to defend her hostile work environment claim in her response brief, and therefore waives it. *See* Section 5.1, *infra.*

Court will now turn to Defendant's motion for summary judgment. (Docket #21).

**3.    SUMMARY JUDGMENT**

**3.1    Standard of Review**

Federal Rule of Civil Procedure 56 provides that the court "shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see Boss v. Castro*, 816 F.3d 910, 916 (7th Cir. 2016). A fact is "material" if it "might affect the outcome of the suit" under the applicable substantive law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A dispute of fact is "genuine" if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* The court construes all facts and reasonable inferences in the light most favorable to the non-movant. *Bridge v. New Holland Logansport, Inc.*, 815 F.3d 356, 360 (7th Cir. 2016). "The court must not weigh the evidence presented or determine credibility of witnesses; the Seventh Circuit instructs 'that [the court] leave[s] those tasks to factfinders.'" *H–D U.S.A., LLC v. SunFrog, LLC*, 311 F. Supp. 3d 1000, 1010 (E.D. Wis. 2018) (quoting *Berry v. Chi. Transit Auth.*, 618 F.3d 688, 691 (7th Cir. 2010)). While the party opposing summary judgment "need not match the movant witness for witness, nor persuade the court that her case is convincing, she need only come forward with appropriate evidence demonstrating that there is a pending dispute of material fact." *Waldridge v. Am. Hoechst Corp.*, 24 F.3d 918, 921 (7th Cir. 1994).

### 3.2    Relevant Facts

#### 3.2.1    Civil Local Rule 56(b)(2)

The following factual overview presents the parties' evidence in a light most favorable to Plaintiff. However, the Court notes that due to the inadequacies of "Plaintiff's Responses to Defendant's Proposed Findings of Fact and Plaintiff's Proposed Findings of Fact," (Docket #33), the facts in this case are largely undisputed.

This district's local rules make clear that a party who opposes a motion for summary judgment must file "a concise response to the moving party's statement of facts that *must* contain[] . . . in the case of any disagreement, specific references to the affidavits, declarations, parts of the record, and other supporting materials relied upon[.]" Civ. L. R. 56(b)(2)(B)(i) (emphasis added). The opposing party must also include "a statement . . . of any additional facts that require the denial of summary judgment, including references to the affidavits, declarations, parts of the record, and other supporting materials relied upon to support the facts described in that paragraph." Civ. L. R. 56(b)(2)(B)(ii).

"Plaintiff's Response to Defendant's Proposed Findings of Fact and Plaintiff's Proposed Findings of Fact," (Docket #33) violates the aforementioned local rule in a variety of ways. For example, in some instances, Plaintiff's response to a proposed fact is a mere "Disputed," or "Disputed by Plaintiff," without any discussion or citation to the record. *See, e.g.,* (*id.* at ¶19, ¶50). In other instances, Plaintiff provides an explanation as to *why* she disputes a fact but does not cite to anything in the record for support. *See, e.g.,* (*id.* at ¶29). Plaintiff also has a tendency to provide an explanation and a citation to the record, however, both the explanation and the citation are unrelated to Defendant's proposed fact. *See,*

*e.g.*, (*id.* at ¶61, ¶120). Plaintiff also responds to a proposed finding of fact with an explanation and a citation to the record, but the citation to the record does not support her response. *See, e.g.*, (*id.* at ¶24). Lastly, in violation of Civil Local Rule 56(b)(2)(B)(ii), Plaintiff submits her own statement of additional facts without any citations to her affidavit or any other parts of the record.

The Court is "entitled to enforce the[se] local rule[s]," and thus, may accept as true all material facts submitted by the moving party and not properly contested by Plaintiff. *Schneiker v. Fortis Ins. Co.*, 200 F.3d 1055, 1057 (7th Cir. 2000); *see also Havey v. Tenneco, Inc.*, No. 98 C 7137, 2000 WL 198445, *3 (N.D. Ill. Feb. 11, 2000) ("Expressing disagreement with a fact contained in the movant's [] statement without providing a citation to materials supporting that dispute is also a basis for deeming the movant's factual assertions to be true."). Further, this Court is justified in refusing to "take into account any facts proposed" by Plaintiff "that are unsupported by references to materials in the record." *Schneiker*, 200 F.3d at 1057. This Court will, however, include those facts—albeit few—that were properly presented by Plaintiff and supported by the record.

### 3.2.2 Facts[3]

Defendant provides commercial cleaning services throughout Milwaukee County. Plaintiff, an African American, was employed by Defendant from October 2014 through early 2019. Specifically, Plaintiff was assigned to clean the Alverno Early Learning Center (the "Center") at Alverno College during the aforementioned time period.

---

[3]The majority of facts as stated herein are from "Defendant's Proposed Findings of Fact," (Docket #24). To the extent this Order refers to any facts or other documents in the record, the Court provides a citation.

In 2014, Plaintiff acknowledged receipt of Defendant's "Employee Handbook" and, in 2017, she acknowledged that she received an updated version of the same. (Docket #28-1, #28-2). Defendant's handbook contains a "Dress Code Policy," which prohibits employees from wearing, among other things, shorts, skirts, or headgear (other than a company hat). (Docket #28–3). However, the handbook states that the "Dress Code may vary based on location." (*Id.*) According to Defendant's Human Resources Manager, Kendra Krause ("Krause"), shorts and skirts are prohibited to prevent employees from suffering chemical splashes or burns. (Docket #28 at 2).

From the beginning of her employment up until May 31, 2018, Plaintiff complied with this policy without objection. On that date, Defendant's Area Manager, Bruce Smith ("Smith"), and its Operations Manager, Deena Jamison ("Jamison"), approached Plaintiff because she was wearing a skirt. They informed her that she was in violation of the dress code, which was in place for employees' safety. Plaintiff said that she was given permission to wear both a skirt and head wrap, although Plaintiff refused to disclose who had given her such permission. Plaintiff also informed Jamison that her religion, the Judah Church, wanted her to wear a skirt. Afterwards, Jamison sent information about her conversation with Plaintiff to Krause. Jamison did not issue Plaintiff a written warning regarding the violation.

On or about June 1, 2018, Plaintiff asked Krause if she could wear a skirt and headwrap to work. Krause informed Plaintiff that she would look into it and also offered her the opportunity to transfer to a different location where Plaintiff would be permitted to wear a skirt. Plaintiff does not dispute that she refused this offer. Krause asked Plaintiff to abide by Defendant's dress code while Krause investigated Plaintiff's request.

Case 2:19-cv-00801-JPS   Filed 09/23/20   Page 8 of 21   Document 41

During this conversation, Plaintiff also told Krause that Defendant's President and Owner, Amy Gottheardt-Muench ("Gottheardt-Muench"), had previously given an employee who worked at the Center permission to wear a skirt at work. Plaintiff stated that she learned of this via a written note from the former employee. During the course of litigation, Defendant learned the name of this former employee was Margarita Mercado ("Mercado"). The parties dispute whether Mercado requested, and whether Defendant granted her, a religious accommodation.

On June 7, 2018, Plaintiff advised Defendant that she could not work. Plaintiff explained that she no longer had the proper uniform as she threw all of her pants away. Thus, Plaintiff did not work on June 7 and 8. Notwithstanding the unexcused nature of Plaintiff's absences, Defendant did not discipline her. Shortly thereafter, Krause sent Plaintiff a Religious Accommodation Employee Request Form ("Accommodation Form"). Meanwhile, Gottheardt-Muench contacted Defendant's customer contact at Alverno College, Theresa Enk ("Enk"), to request permission for Plaintiff be able to wear a skirt at work. Enk denied this request, explaining that it was also Alverno College's policy that cleaning staff wear pants to prevent chemical injuries. However, after Gottheardt-Muench reached out to Enk a second time regarding Plaintiff's request, they determined that they could accommodate Plaintiff by allowing her to wear a skirt at work provided that she covered her legs.

Plaintiff returned a completed Accommodation Form to Krause, via fax, on June 15, 2020. (Docket #28-5). In addition to her request for an accommodation from Defendant's dress code, she also requested to "Work Monday [through] Thursday" and that she be off of work on Fridays so that she could practice the Sabbath of the Judah Church (sundown Friday until

sundown on Saturday). (*Id.* at 1; Docket #32 at 2).[4] She also included a note, dated June 14, 2018, from her Church Elder that explained the basis for Plaintiff's request that she refrain from wearing pants. It is undisputed that Plaintiff had already provided the note from her Church Elder to Defendant. (Docket #28-2 at 5). Shortly thereafter, Krause and Gottheardt-Muench reviewed Plaintiff's completed form. Gottheardt-Muench asked Enk if Plaintiff could come to the Center on the weekend as opposed to Friday nights. Enk said that Alverno College could not accommodate this request, as it was unacceptable for diapers and food waste to sit out. Enk explained that this accommodation could cause fruit flies, rodents, and an odor. Lastly, Enk stated that the Center would not allow Plaintiff to work on Saturdays or Sundays because the Alverno College security team did not "round" on the weekend, as the facility was locked down. In order to grant Plaintiff's request Alverno College would have to modify the schedule and routes of its security detail.

While Defendant maintains a "float pool" of employees who can be called in to cover unexpected or requested absences, Defendant contends

---

[4]It is undisputed that Plaintiff sent Defendant a completed Accommodation Form on June 15, 2018, in which she requested time off to observe the Judah Church's Sabbath. However, in Plaintiff's Affidavit she states that on May 22, 2018, Defendant did not provide her with a reasonable accommodation for her Sabbath because Krause only offered Plaintiff the option to transfer to a location with reduced pay or work hours. (Docket #32 at 2). However, in her reply declaration, Krause asserts that Plaintiff asked for a raise on two occasions prior to the date that Krause learned that Plaintiff was seeking a religious accommodation, May 31, 2018. (Docket #37 at 1–2). Thus, Krause avers that any remarks to Plaintiff about pay or hours, including Krause's statement to Plaintiff *before* May 31, 2018 that Defendant did not have any available assignments with comparable pay or hours to the Center, were unrelated to Plaintiff's desire for a religious accommodation. (*Id.*)

that this "float pool" is not intended to be used to cover long-term absences or permanent schedule changes. Typically, when an employee cannot work at a location long-term, it is Defendant's practice to offer that employee a transfer to another location. Although Plaintiff does not dispute these facts, she argues that Defendant had "at least 15 other workers who could have simply taken the garbage out . . . and any cleaning could have been completed by [her] on a Saturday evening." (Docket #32 at 3). She also argues that Defendant, being a large company, could have easily changed her schedule to work at the Center without decreasing her income and hours. (*Id.*)

Plaintiff does not dispute that Krause returned an "Employer Review of Religious Accommodation Request" form to Plaintiff. (Docket #28-6). The top of this form explains that Defendant "can place [Plaintiff] at another account/building that does not require working on Friday." (*Id.*) It also indicated that Plaintiff's request presented sanitation issues and an undue hardship.

Approximately one month later, on July 19, 2018, Gottheardt-Muench alleges that she wrote Plaintiff a hand-written note, which provided a list of possible transfer options to Plaintiff in the event she wanted to transfer from the Center. (Docket #25-5). The options Gottheardt-Muench proposed in her letter offered a higher hourly rate than Plaintiff's current rate and either more or comparable work hours. (*Id.* at 2). Plaintiff avers that she never received this letter, either in hardcopy or e-mail form. (Docket #32 at 2). Thereafter, Plaintiff did not contact Gottheardt-Muench about transferring locations.

In early July 2018, Plaintiff told her supervisor, Smith, that she believed a co-worker, Nikita Freeman ("Freeman") had bumped into her

intentionally. In response to these allegations, Krause interviewed Freeman and another co-worker. Ultimately, Krause believed that this incident between Freeman and Plaintiff was unintentional. Krause also believed that neither Freeman nor any of Plaintiff's other co-workers at the Center had any knowledge of Plaintiff's religious beliefs or previous accommodation requests. Plaintiff alleged that Freeman bumped into her again on July 12. Instead of informing any of Defendant's employees, Plaintiff filled out an incident report to the head of security at Alverno College. (Docket #28-11). Upon learning of this incident, Gottheardt-Muench and Krause called Plaintiff. Notably, during this call Plaintiff did not allege that this incident was based on her prior request for leave, her religion, or her race. Gottheardt-Muench and Krause put Plaintiff on three days of paid leave while they gathered information. Plaintiff understood that this suspension was not disciplinary in nature.

Both Krause and Gottheardt-Muench interviewed other Eagle employees about this incident. After reviewing the information from the interviews, Krause concluded that this second bumping incident was also unintentional. However, per Krause's suggestion, Jamison and Smith met with Freeman to review Defendant's Equal Employment Opportunity ("EEO") and Anti-harassment policies. During this meeting, Freeman stated that she did not know about Plaintiff's religious request but did know that Plaintiff was permitted to wear a dress and apron. (Docket #26-2). Similarly, Gottheardt-Muench and Krause had a phone call with Plaintiff in order to discuss the aforementioned policies with her. Krause and Gottheardt-Muench signed a letter documenting that this conversation took place. (Docket #31-2). Further, they made arrangements to limit Plaintiff's

contact with Freeman. Plaintiff thanked Gottheardt-Muench and told Gottheardt-Muench that Plaintiff was happy with the outcome.

In addition to her run-ins with Freeman, Plaintiff alleged that "suspicious activities began occurring" soon after she requested an accommodation. (Docket #32 at 2). For example, she told Gottheardt-Muench and Krause that she felt that Smith had conducted a recent inspection of Plaintiff's work location as a result of her accommodation request. Gottheardt-Muench informed Plaintiff that Smith, as a manager, was required to conduct inspections. She explained that inspections were not intended to be disciplinary but were meant to provide direction for how to best perform one's job. Gottheardt-Muench also added that it was possible that Smith was not doing the inspections as frequently as he should have been and that they had recently corrected that issue. Krause indicated that while Smith had failed to inspect Plaintiff's area for quite some time, he had been inspecting the work of other employees placed at Alverno College. Defendant gave him a verbal warning and directed him to complete his inspections monthly for all employees. No one disciplined Plaintiff as a result of Smith's inspection, nor did she lose pay or work hours. Additionally, later in July, Defendant's Vice President, Theresa Olsen ("Olsen") and Jamison met with Smith to review both the EEO and Anti-harassment policy.

Lastly, Plaintiff also states in her affidavit that her cleaning supplies went missing and that the equipment she was provided was filthy and inferior after she requested her accommodation. On her July 6, 2018 call with Gottheardt-Muench and Krause, Plaintiff expressed concern that her access to the supply closet at the Center had been restricted. Notably, Gottheardt-Muench does not recall Plaintiff claiming that she had been

provided with inferior or defective equipment. In response to Plaintiff's claims of restricted access, both Krause and Gottheardt-Muench explained that practices at the Center regarding access to supplies had changed and any limited access to supplies was unintentional. Gottheardt-Muench also offered for Plaintiff to report to a different supervisor, Mr. Searcy.

Gottheardt-Muench documented some of her conversations with Plaintiff in a July 10, 2018 letter. *See* (Docket #25-1). In addition to discussing the inspection issues, access to cleaning supplies, and Defendant's accommodation of Plaintiff by allowing her to wear a skirt, the letter explains to Plaintiff that "if [Plaintiff] would like to have every Friday night off, [Defendant has] many accounts in the Southeastern WI area that would be able to accommodate that schedule . . . ." (*Id.* at 3). The letter instructed Plaintiff to let Defendant know if she would consider a transfer. (*Id.*) Plaintiff does not dispute that she received this letter or that she refused to sign it. However, Plaintiff repeatedly alleges that Defendant only offered her accommodations that either offered fewer work hours or less pay.

Plaintiff made no additional reports of harassment or discrimination to Defendant in the months that followed, however, she did file claims with the Equal Employment Opportunity Commission ("EEOC"). Ultimately, the EEOC was unable to conclude that Title VII violations had occurred and issued Plaintiff two "Right to Sue" letters. (Docket #19-3). On or about December 6, 2018, Plaintiff called Olsen and informed her she was resigning to take another job. Plaintiff indicted that she would work until January 25, 2019, although she eventually changed her last workday to January 23.

### 3.3     Analysis

#### 3.3.1     Plaintiff's Waiver of Certain Claims

Plaintiff alleged that Defendant violated Title VII by subjecting her to discrimination because of her race and religion, as well as retaliating against her and subjecting her to a hostile work environment. *See* (Docket #13). In Defendant's brief in support of its motion for summary judgment, Defendant argues that Plaintiff fails to establish the four elements of a hostile work environment claim.[5] (Docket #22 at 23–25). Notably, Plaintiff does not respond to Defendant's refutation of this claim, let alone use the words "hostile work environment." *See, generally*, (Docket #31). Plaintiff's brief also omits all references to Plaintiff's racial discrimination complaint, addressing only Plaintiff's allegations of religious discrimination. *See, generally*, (*id.*). Thus, the Court finds that Plaintiff has waived, and Defendant is entitled to summary judgment as to, her hostile work environment and racial discrimination claims. *Toney v. Rosewood Care Ctr., Inc.*, No. 98 C 693, 2001 WL 1105127, at *5 (N.D. Ill. Sept. 20, 2001) (holding that the plaintiffs waived, and that the defendants were entitled to summary judgment as to, a claim because the plaintiffs "offered no response" to the defendants' argument and, therefore, it was "difficult if not impossible for the Court to find that a reasonable trier of fact could rule in [the plaintiffs'] favor.").

---

[5] "[T]o avoid summary judgment on a hostile work environment claim, a plaintiff must establish four elements: (1) the work environment must have been both subjectively and objectively offensive; (2) [the plaintiff's protected status] must have been the cause of the harassment; (3) the conduct must have been severe or pervasive; and (4) there must be a basis for employer liability." *Orton-Bell v. Indiana*, 759 F.3d 768, 773 (7th Cir. 2014).

Plaintiff's retaliation claim meets a similar fate. Again, Defendant's brief provides an overview of retaliation claims under Title VII. Title VII prohibits employers from discriminating against an employee "because he has opposed any [unlawful employment] practice . . . or because he has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding or hearing . . . ." 42 U.S.C. § 2000e-3(a). The adaptation of the *McDonnell Douglas* framework for retaliation claims requires the plaintiff to show "that (1) after lodging a complaint about discrimination, (2) only [she], and not any otherwise similarly situated employee who did not complain, was (3) subjected to an adverse employment action even though (4) [she] was performing [her] job in a satisfactory manner." *Johnson v. Cambridge Indus., Inc.*, 325 F.3d 892, 897 (7th Cir. 2003) (internal quotations and citation omitted).

Although Plaintiff alleges that she can establish a *prima facie* case for retaliation, her response brief is void of any mention or reference to her suffering an adverse action *after* she complained about a discriminatory practice or that she suffered retaliation after complaining of discrimination to Defendant. *See, generally*, (Docket #31). The only "adverse action" Plaintiff refers to in her response is Defendant's failure to provide her with a *reasonable accommodation* after she requested to have her Sabbath off. (*Id.* at 4, 9). To be clear, that is a complaint of discrimination, *not* retaliation. Because Plaintiff does not address her retaliation claim against Defendant in her response brief, the Court concludes that she has waived the same.

### 3.3.2 Religious Discrimination

In her response brief, Plaintiff only properly addresses Defendant's arguments regarding her religious discrimination claim. Pursuant to Title VII, it is unlawful for an employer to "discriminate against any individual

with respect to [her] compensation, terms, conditions, or privileges of employment, because of such individual's . . . religion . . . ." 42 U.S.C. § 2000e-2(a)(1). When evaluating Title VII discrimination claims, "the legal standard . . . is simply whether the evidence would permit a reasonable factfinder to conclude that the plaintiff's. . . religion . . . or other proscribed factor caused the . . . adverse employment action." *Ortiz v. Werner Enters., Inc.*, 834 F.3d 760, 765 (7th Cir. 2016). Although *Ortiz* eschews the distinction between "direct" and "indirect" evidence, the Court can still rely on the framework outlined in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973), to "cull[] the relevant evidence needed to demonstrate whether a reasonable factfinder could conclude that an employer engaged in an adverse employment action" based on a plaintiff's protected status or characteristic. *Johnson v. Advocate Health & Hosp. Corp.*, 892 F.3d 887, 894 (7th Cir. 2018). Under *McDonnell Douglas*, Plaintiff has the initial burden of establishing that (1) she is a member of a protected class; (2) she performed reasonably on the job in accordance with Defendant's legitimate expectations; (3) despite her reasonable performance, she was subjected to an adverse employment action; and (4) similarly situated employees outside of her protected class were treated more favorably by Defendant. *David v. Bd. of Trs. of Cmty. Coll. Dist. No. 508*, 846 F.3d 216, 225 (7th Cir. 2017). If Plaintiff satisfies this burden, then Defendant "must articulate a legitimate, nondiscriminatory reason for the adverse employment action, at which point the burden shifts back to the plaintiff to submit evidence that the employer's explanation is pre-textual." *Id.*

Plaintiff is clearly a member of a protected class with regard to both her religion and her race. Further, Defendant does not argue that Plaintiff did not perform reasonably at her job. The parties dispute whether

Defendant subjected Plaintiff to an adverse employment action[6] and whether there were similarly situated employees who were treated more favorably by Defendant. Because Plaintiff has failed to proffer evidence of a similarly situated employee who was outside of Plaintiff's protected class and who was also treated more favorably than Plaintiff, she has clearly not met her burden and ultimately has not made out a *prima facie* case for religious discrimination.

"To meet her burden of demonstrating that another employee is 'similarly situated,' a plaintiff must show that there is someone who is directly comparable to her in all material respects." *Patterson v. Avery Dennison Corp.*, 281 F.3d 676, 680 (7th Cir. 2002). "The other employees need not be identical to the plaintiff, but there must be a substantial similarity so as to create the inference that discriminatory intent could be the reason for differing treatment." *Mendoza v. Chi. Park Dist.*, No. 00 C 2825, 2002 WL 31155078, at *7 (N.D. Ill. Sept. 26, 2002); *see also Zayas v. Rockford Mem'l Hosp.*, 740 F.3d 1154, 1158 (7th Cir. 2014) ("[A] plaintiff still needs to show that a

---

[6]In her response, Plaintiff claims she suffered an adverse employment action when she was allegedly offered a position with fewer hours and less pay than her current position as an accommodation. Under Title VII, an employer is required "to make reasonable efforts to accommodate the religious practices of employees unless doing so would cause the employer undue hardship." *Porter v. City of Chi.*, 700 F.3d 944, 951 (7th Cir. 2012). It is undisputed that Defendant offered Plaintiff the opportunity to transfer to a different location; however, the parties dispute whether these offers were comparable to Plaintiff's current position. "[I]n some circumstances, an employer's offering a different position with lower pay . . . might not be a reasonable accommodation." *EEOC v. Walmart Stores East LP*, 18-cv-804-bbc, 2020 WL 247462, at *6 (W.D. Wis. Jan. 16, 2020), *appeal docketed,* No. 20-1419 (7th Cir. Mar. 16, 2020) (string citation omitted). Because, as discussed herein, Plaintiff cannot meet her burden with regard to the fourth prong of her discrimination claim, the Court does not evaluate (1) whether Defendant offered only less lucrative transfer opportunities and, if so, (2) whether such offers were a reasonable accommodation.

comparator employee was treated more favorably by the same decisionmaker even though they were both subject to the same standards of conduct and engaged in similar, but not necessarily identical, conduct.") (internal quotations and citation omitted). "Whether a comparator is similarly situated is typically a question for the fact finder, unless, of course, the plaintiff has no evidence from which a reasonable fact finder could conclude that the plaintiff has met [her] burden on this issue." *Johnson*, 892 F.3d at 895.

Plaintiff, through her affidavit, offers only the following regarding the existence of a substantially similar employee: "Another Eagle employee, a Christian by the name of margarita mercado [sic] was granted a similar accommodation for Sundays so she could practice her Sabbath, however my accommodation for Sabbath was denied by Eagle." *See* (Docket #32 at ¶14). Plaintiff also told Krause that Plaintiff received a note from a former employee at the Alverno location (who was later determined to be Mercado) stating that Gottheardt-Muench had given Mercado permission to wear skirts at work. *See* (Docket #33 at ¶27). As evidence, these statements by Plaintiff are woefully insufficient at this summary judgment stage to raise a genuine dispute of material fact. The Seventh Circuit "has consistently held that summary judgment is not a dress rehearsal or practice run; it is the put up or shut up moment in a lawsuit, when a party must show what evidence it has that would convince a trier of fact to accept its version of the events." *H–D U.S.A., LLC*, 311 F. Supp. 3d at 1025 (internal quotations and citation omitted). Plaintiff is unable to manufacture a genuine dispute of material fact with her unsubstantiated and uncorroborated statements regarding Mercado.

Case 2:19-cv-00801-JPS   Filed 09/23/20   Page 19 of 21   Document 41

Even if the Court considered Plaintiff's affidavit or her statement to Krause, Plaintiff does not establish Mercado as a similarly situated comparator. While Mercado allegedly worked at the Alverno location, Plaintiff proffers no evidence as to what Mercado's position was, whether she worked at the Center or somewhere else within the college, what shift she worked, who her supervisor was, etc. Similarly, Plaintiff does not inform the Court *who* gave Mercado permission to allegedly have Sundays off in order to observe her Sabbath. Based on this lack of evidence of persons materially similarly situated to Plaintiff, Plaintiff fails to meet her burden and Defendant is entitled to summary judgment on the one claim that Plaintiff bothered to address.

4.      **CONCLUSION**

Based on the foregoing, the Court will deny Plaintiff's motion to amend her complaint, (Docket #18). The Court will also grant Defendant's motion for summary judgment, (Docket #21). Because the Court will adopt the parties' stipulation dismissing Plaintiff's constructive discharge claim with prejudice, (Docket #15), the Court dismisses Plaintiff's remaining claims and ultimately dismisses this case with prejudice.

Accordingly,

**IT IS ORDERED** that the parties' stipulation to dismiss, with prejudice, Plaintiff's constructive discharge claim against Defendant (Docket #15) be and the same is hereby **ADOPTED**; Plaintiff's termination-based Title VII claim be and the same is hereby **DISMISSED with prejudice**;

**IT IS FURTHER ORDERED** that Plaintiff's motion for leave to amend her complaint (Docket #18) be and the same is hereby **DENIED**;

**IT IS FURTHER ORDERED** that Defendant's motion for summary judgment (Docket #21) be and the same is hereby **GRANTED;** and

**IT IS FURTHER ORDERED** that this action be and the same is hereby **DISMISSED with prejudice**.

The Clerk of the Court is directed to enter judgment accordingly.

Dated at Milwaukee, Wisconsin, this 23rd day of September, 2020.

BY THE COURT:

J.P. Stadtmueller
U.S. District Judge